UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ROSEANN McCLEAN,

                Plaintiff,

   — against —

MICHAEL J. ASTRUE,[1] Commissioner of
Social Security,

                Defendant.
----------------------------------------------------------------X

**MEMORANDUM AND ORDER**

04-CV-1425 (SLT)

**TOWNES, United States District Judge:**

Roseann McClean ("Plaintiff") brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to seek reversal of a final decision of the Commissioner of Social Security that she was not eligible for disability insurance benefits and Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff asserts that she was disabled as of April 25, 1995 because of systemic lupus erythematosus ("SLE"). The Commissioner found that Plaintiff maintained a residual functional capacity for "light work" and that she failed to cooperate and appear at a consultative examination. Based on these reasons, the Commissioner denied her claims for disability benefits. Both Plaintiff and Commissioner agree that the Commissioner's decision is contrary to Social Security Administration ("SSA") regulations and case law. This Court must, therefore, determine whether remand or an immediate award for benefits is the appropriate action in this matter.

---

[1] Michael J. Astrue, the current Commissioner of Social Security, took office as of February 12, 2007; pursuant to Fed. R. Civ. P. Rule 25(d)(1), he was then automatically substituted as defendant for his predecessor in office, Joanne B. Barnhart, who had been named as defendant in Plaintiff's Complaint.

1

For the following reasons, the Commissioner's final decision is reversed and the Court remands this matter to the Commissioner for calculation of benefits for the period of April 1995 to May 1999 and for determination of Plaintiff's eligibility for disability benefits for the period after May 1999.

## BACKGROUND

Plaintiff applied for disability and SSI benefits on July 26, 1995, alleging the onset of a disability from her SLE on April 25, 1995. Admin. R. ("A.R.") at 118, 123. The application and subsequent request for reconsideration were denied, and Plaintiff requested a hearing. *Id.* at 74-106. On August 7, 1996, Plaintiff appeared with counsel in a hearing before administrative law judge Sol Wieseltheir ("ALJ"). *Id.* at 637. The ALJ considered the case *de novo* and, on October 18, 1996, rendered a decision affirming the previous denial of benefits. *Id.* at 60-68. Plaintiff requested a review by the SSA Appeals Council. By order dated June 29, 1999, the Appeals Council remanded Plaintiff's case for further administrative proceedings. *Id.* at 511-14.

The ALJ conducted a supplemental hearing on March 14, 2001, which was continued on June 27, 2001. *Id.* at 623-34, 680-755. At these hearings, the ALJ heard testimony from a medical expert, Dr. Charles Plotz, and a vocational expert, Amy Leopold. The ALJ also requested that Plaintiff submit to a psychiatric consultative examination. Plaintiff failed to attend two scheduled appointments with the psychiatrist. *Id.* at 18. By a decision dated November 20, 2002, the ALJ found that Plaintiff was not under a "disability" as defined by the Act and, therefore, not eligible for disability benefits. *Id.* at 15-21. In a decision listed as filed on February 6, 2004, the Appeals Council declined to review the ALJ's November 20, 2002, decision. The ALJ's decision became the final decision of the Commissioner and this action followed.

2

## DISCUSSION

### A. Standard of Review

This Court may set aside an ALJ's decision only where it is based upon legal error or where its factual findings are not supported by substantial evidence. *See Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)) (internal quotation marks omitted). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

This Court also reviews the ALJ's decision to determine whether the ALJ applied the correct legal standard. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). "'Where an error of law has been made that might have affected the disposition of the case, this Court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ.'" *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984) (quoting *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 n.3 (11th Cir. 1982)). This Court reviews questions of law *de novo*. *Id.*

### B. Legal Standard for Disability Determinations

In order to establish entitlement to benefits under the Act, a claimant must establish that she has a "disability." *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). The term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Balsamo*, 142 F.3d at 79.

In evaluating a claim for disability benefits, the ALJ must follow the five-step procedure set out in the regulations governing the administration of Social Security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920; *Diaz v. Shalala*, 59 F.3d 307, 312 n.2 (2d Cir. 1995); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry*, 675 F.2d at 467) (alterations and omission in original). The claimant bears the burden of proof in the first four steps of the inquiry, but the Commissioner bears the burden in the fifth step. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) (quoting *Balsamo*, 142 F.3d at 80).

## C. Application

In this case, the ALJ denied Plaintiff disability benefits based on his findings that, although her SLE was "severe," it was "not severe enough" to meet or medically-equal one of the listed impairments in Appendix 1 (hereinafter a "Listed impairment"). A.R. at 17. Additionally, the ALJ found Plaintiff maintained a residual functional capacity for "light work"

4

and could therefore perform her past relevant work. *Id.* at 20. The ALJ also found that Plaintiff failed to cooperate based on her noncompliance with the request to attend a psychiatric consultative examination. *Id.* at 19. For these reasons, the ALJ concluded that she was not under a "disability" as defined in the Act. *Id.* at 21.

### 1. Legal Errors in ALJ's Decision

The Commissioner concedes that the ALJ failed to apply the correct legal standards in this case. The Commissioner maintains that the ALJ did not follow agency guidelines regarding the failure to cooperate, did not properly assess the treating physicians' opinions and state what weight he accorded those opinions, and did not specify the factual basis for his residual functional capacity determination. The Court agrees with these concessions.

#### a. Failure to Adhere to Cooperation Regulations

First, the ALJ's decision does not follow regulations regarding the treatment of the failure to cooperate by a claimant. Regulations state that if a claimant "do[es] not have a good reason for failing or refusing to take part in a consultative examination or test which [the SSA] arrange[s] . . ., [the SSA] may find that [the claimant is] not disabled or blind." 20 C.F.R. §§ 404.1518, 416.918. Nevertheless, under the SSA's Hearing, Appeals, and Litigation Law Manual ("HALLEX"), the ALJ must include in his decisions "a statement about the effect (if any) of the claimant's failure or refusal [to attend the consultative examination] on the decision." HALLEX § I-2-5-24A (Sept. 28, 2005) (available at http://www.socialsecurity.gov/OP_Home/hallex/I-02/I-2-5-24.html). Here, the ALJ's decision neither makes such a statement nor determines whether Plaintiff's failure to appear at the psychiatric consultative examination was excused for good reasons. *See* 20 C.F.R. §§ 404.1518, 416.918.

5

### b. Failure to Comply with Treating Physician Regulations

Second, the ALJ's decision does not address the opinions of some of Plaintiff's treating physicians. In reviewing medical evidence, the ALJ must give "controlling weight" to a treating physician's opinion, as long as the treating physician's "opinion on the issue(s) of the nature and severity of [the] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). If the ALJ does not accord controlling weight to the treating physician's opinion, the ALJ must specify the "weight [he] gave to the treating source's medical opinion and the reasons for that weight." Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996). In conducting this analysis, the ALJ must assess: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) other relevant factors. *See Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6)). The "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell*, 177 F.3d at 133.

Here, in determining that Plaintiff does not meet one of the listed impairments, the ALJ decision does not rebut, weigh or even acknowledge the findings of Plaintiff's treating internist, Dr. Lucinda Harris. In a May 28, 1999, questionnaire, Dr. Harris opined that Plaintiff had significant, documented constitutional symptoms and signs; that her condition involved her joint, cardiovascular, renal, and mental facilities to a "moderate" degree; and that it involved her

6

digestive, skin, and neurological facilities to a "mild" degree. A.R. 522-525. As discussed below, such conditions establish a listed impairment for SLE.

Additionally, in determining Plaintiff's residual functional capacity, the ALJ again fails to acknowledge Dr. Harris's opinion on Plaintiff's work capabilities and did not state what weight he accorded the opinion of Plaintiff's treating neurologist, Dr. Mark Horwich. Inexplicably, the ALJ found that Plaintiff could stand or walk for six hours in an eight-hour day, even though Drs. Horwich and Harris both reported that she could only stand or walk for one-half hour each in an eight-hour day. *Id.* at 19, 166, 313. Where there is a lack of medical opinion to support the ALJ's findings,[2] it is well-settled that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion .... [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *Balsamo*, 142 F.3d at 81 (citing *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983)).

### c. Failure to Specify Rationale

The ALJ's decision also fails to specify the rationale for its findings. The Second Circuit requires that "the crucial factors in any determination must be set forth with sufficient specificity to enable [reviewing courts] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). The ALJ provides no foundation for his conclusion that Plaintiff can stand or walk for six hours of an eight-hour workday. Drs. Horwich's and Harris's finding that Plaintiff could stand and walk for no more

---

[2] A state agency medical consultant, Alan Kayes, M.D., did opine that Plaintiff could stand and/or walk for about six hours in an eight-hour workday on November 29, 1995. A.R. at 95. Nevertheless, the ALJ did not reference this opinion in his analysis and, even if he had, Dr. Kayes was a non-examining physician, who should not be accorded controlling weight.

7

than one hour a day was largely uncontested in the record and supported by the ALJ's own medical expert, Dr. Charles Plotz. A.R. at 746. Given this convergence of evidence, the ALJ faced a high burden in explaining his own contrary conclusion. Accordingly, the ALJ's residual functional capacity finding is based on reversible legal error. *Cf., e.g., Snell*, 177 F.3d at 134 (holding that a claimant was entitled to an explanation of why the ALJ discredited her treating physician's opinion).[3]

## 2. Plaintiff's Request for Immediate Award of Benefits

Based on these legal errors, Plaintiff requests that this Court award her benefits immediately, pursuant to 42 U.S.C. § 405(g), without remanding the case to the Commissioner for additional proceedings. Plaintiff contends that an immediate award of benefits is appropriate because persuasive proof of her disability is in the record and supports such an award. The Commissioner, instead, argues that remand is appropriate because the record does not compel a conclusion that Plaintiff was disabled.

Generally, it is for the Commissioner, and not this Court, to weigh conflicting evidence in the record. *Schaal*, 134 F.3d at 504. A remand to the Commissioner for further development of the evidence is appropriate "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard. . . ." *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks omitted). Nevertheless, "[w]here application of the correct legal standard could lead to only one conclusion, [this Court] need not remand." *Schaal*, 134 F.3d at 504 (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)). Indeed, this Court has the clear authority to award benefits without the necessity of a remand. *See* 42 U.S.C. § 405(g) ("The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming,

---

[3] Plaintiff also contends that the ALJ placed undue and improper weight on the opinion of the medical expert and improperly evaluated her pain and credibility. Because the Commissioner concedes legal error on other grounds, the Court need not address these assertions.

8

modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). Yet, the Second Circuit has held that an order for the immediate payment of benefits is appropriate only "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This Court will remand solely for calculation of benefits where there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." *Rosa*, 168 F.3d at 83. With these principles, the Court turns to Plaintiff's case.

### a. Listed Impairment

Under step three of the disability framework, if the ALJ finds that the claimant suffers from an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumptively disabled and benefits should be granted. *See Ferraris*, 728 F.2d at 584. At the time of the ALJ's decision, 14.02A of Appendix 1 requires a finding of disability where a claimant has SLE and further documents "[o]ne of the following:

> 1. Joint involvement, as described under the criteria in 1.00; or
> 2. Muscle involvement, as described under the criteria in 14.05; or
> 3. Ocular involvement, as described under the criteria in 2.00ff; or
> 4. Respiratory involvement, as described under the criteria in 3.00ff; or
> 5. Cardiovascular involvement, as described under the criteria in 4.00ff or 14.04D; or
> 6. Digestive involvement, as described under the criteria in 5.00ff; or
> 7. Renal involvement, as described under the criteria in 6.00ff; or
> 8. Hematologic involvement, as described under the criteria in 7.00ff; or
> 9. Skin involvement, as described under the criteria in 8.00ff; or
> 10. Neurological involvement, as described under the criteria in 11.00ff; or
> 11. Mental involvement, as described under the criteria in 12.00ff.

20 C.F.R. § 404, Subpart P, Appx. 1 (2002). A second definition for SLE may be satisfied if a claimant shows "[l]esser involvement of two or more organs/body systems listed in paragraph A [quoted above], with significant, documented, constitutional symptoms and signs of severe

fatigue, fever, malaise, and weight loss. At least one of the organs/body systems must be involved to at least a moderate level of severity." *Id.* at 14.02B.

In this case, the ALJ found that Plaintiff suffered from SLE that was "severe" within the meaning of the Regulations but "not severe enough" to meet or medically equal one of the impairments listed in Appendix 1. A.R. 17.[4]

### b. Treating Physician's Assessment

In reaching the determination that Plaintiff's SLE did not qualify under Appendix 1, the ALJ failed to give controlling weight to the May 28, 1999, questionnaire prepared by Plaintiff's treating internist, Dr. Lucinda Harris. The questionnaire stated that Plaintiff has significant, documented constitutional symptoms and signs of severe fatigue, malaise and weight loss. A.R. at 522. It noted an absence of fever due to the use of the steroid Prednisone. *Id.* at 522, 525. The questionnaire indicated that the SLE had involvement in her joint, cardiovascular, renal, and mental systems to a "moderate" degree and involvement in her digestive, skin, and neurological systems to a "mild" degree. *Id.* at 522-525. Plaintiff maintains that Dr. Harris's questionnaire establishes that she meets the conditions in Listing 14.02B with (1) involvement of two or more organs/body systems, (2) at least one of which involves a moderate level of severity, and (3) significant, documented constitutional symptoms and signs.

---

[4] The Commissioner suggests that the ALJ denied Plaintiff's benefits solely based on her failure to attend her psychiatric consultative examination. The Commissioner is correct that Social Security regulations permit an ALJ to deny benefits on the basis of a failure to cooperate. *See* 20 C.F.R. § 404.1518(a). Nevertheless, "[t]he case law on the matter . . . illustrates that the failure to appear for a scheduled examination is rarely seen as a definitive bar to benefits, and that courts will look to see if the ALJ had substantial evidence for his decisions in the absence of the evaluation." *Williams v. Barnhart*, 2006 WL 724546, at *4 (E.D. Pa. Mar. 17, 2006) (referencing *Lepenica v. Commissioner of Soc. Sec.*, 2004 WL 1894071, at **3 n.1 (3d Cir. 2004)); *Ettinger v. Heckler*, 1985 WL 4287, at *2 (E.D. Pa. 1985)). The Seventh Circuit also noted that it has been told that it is "the policy of the Social Security Administration . . . not to impose th[e] sanction [of the denial of benefits] but instead to decide the claim on the basis of the remaining evidence." *Pearce v. Sullivan*, 871 F.2d 61, 62 (7th Cir. 1989). This Court will follow suit and examine Plaintiff's claim on the basis of the evidence in the record.

As mentioned above, the opinion of the treating physician must be given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Here, ample evidence in the record supports granting controlling weight to Dr. Harris's assessment. First, Dr. Harris's conclusions were well-supported by medically acceptable diagnostic tools. Dr. Harris treated Plaintiff since February 1992 and examined her approximately every six months. A.R. at 119. Dr. Harris's evaluation was based on a battery of laboratory tests, the Plaintiff's complaints, and her observations of Plaintiff over the years. *See, e.g., id.* at 237, 239, 241, 242, 244-263, 281, 283-311. For example, on February 2, 1996, Dr. Harris's notes observe that Plaintiff was having a lupus flare up and having stomach problems. *Id.* at 283. Dr. Harris was also consistently informed of Plaintiff's condition by specialists to whom she referred Plaintiff. *See, e.g., id.* at 235, 236, 240, 271.

Second, the opinions of numerous treating and non-examining physicians are consistent with Dr. Harris's conclusions. First, Dr. Susan Goodman, Plaintiff's treating rheumatologist, who saw Plaintiff every two to four weeks starting in August 1994, believed that Plaintiff has "major thrombotic complications related to anti-cardiolipin antibody positivity in lupus" and is "developing significant inflammatory manifestation." *Id.* at 119, 187. In a June 27, 1995, disability report, Dr. Goodman diagnosed Plaintiff with "severe SLE" with symptoms of migraine headaches, arthritis, nephritis, pleurisy, multiple strokes secondary to anti-cardiolipin syndrome, and an inability to concentrate. *Id.* at 343, 344, 346, 553. On July 7, 1996, Dr. Goodman assessed Plaintiff as having memory lapses due to stroke and medications and that her high dose of immunosuppressive medications required frequent monitoring both for SLE activity and the effects of the medications. *Id.* at 315. She assessed that Plaintiff could sit only two

11

hours, stand one-half hour, and walk one-half hour in an eight-hour workday. *Id.* at 314. She could lift up to ten pounds occasionally and never carry, bend, squat, crawl, or climb. *Id.*

Second, Dr. Mark Horwich, Plaintiff's treating neurologist, agreed that she was disabled. In a July 26, 1996, letter, Dr. Horwich stated that "it is my opinion that [Plaintiff] has been disabled and unable to work since April 24, 1995." *Id.* at 550. He noted that she has hip pain which prevented her from sitting more than 20 minutes. *Id.*[5] Although Dr. Horwich's opinion as to Plaintiff's disability is not dispositive, he also previously diagnosed her with SLE, Liebman Sachs endocarditis, anticardiolipin antibody syndrome, cerebral infarctions, and severe migraines. *Id.* at 155. In an April 22, 1996, report, Dr. Horwich stated that Plaintiff has difficulty concentrating, memory lapses, and hip pain. *Id.* at 313. Like Dr. Goodman, Dr. Horwich assessed that Plaintiff could sit only two hours, stand one half hour, and walk one half hour in an eight-hour workday. *Id.* at 312.

Indeed, even the ALJ's medical expert, Dr. Charles Plotz, who expressed skepticism over Plaintiff's claim, agreed with Dr. Harris's assessment in the questionnaire. *Id.* at 746-747. Thus, Dr. Harris's assessment is not inconsistent with other substantial evidence in the record and is supported by objective measures; therefore, this Court accords it controlling weight.

### c. Establishing Disability from 1995 to 1999

The Commissioner contends that Plaintiff cannot establish a 14.02B disability because Dr. Harris noted that she did not have a fever, one of the four constitutional symptoms and signs listed in 14.02B. A plain reading of the regulation indicates that the list of constitutional symptoms is conjunctive – meaning the claimant must have all four symptoms to qualify as disabled. *See* Appx. 1 at 14.02B ("constitutional symptoms and signs of severe fatigue, fever,

---

[5] In August 16, 1995, Dr. Horwich previously stated that Plaintiff had no limitations on sitting, but he indicated that he did not know about Plaintiff's hip condition at the time. A.R. 159, 550.

malaise, *and* weight loss") (emphasis added). Nevertheless, since the ALJ's decision in this case, the regulations have been amended to make clear that the constitutional symptoms and signs list should not be conjunctive. Under the regulation effective June 16, 2008, Listing 14.02 now defines SLE to include:

> A. Involvement of two or more organs/body systems, with:
>    1. One of the organs/body systems involved to at least a moderate level of severity; and
>    2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
>
> or
>
> B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>    1. Limitation of activities of daily living.
>    2. Limitation in maintaining social functioning.
>    3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. § 404, Subpart P, Appx. 1 (2009). Appendix 1 was revised to require "at least two" of the constitutional symptoms or signs, instead of all four, because the prior requirement was "too severe." Revised Medical Criteria for Evaluating Immune System Disorders, 73 Fed. Reg. 14570, 14582 (Mar. 18, 2008). The regulations now establish that "any individual with an autoimmune disorder involving two or more organs/body systems with one organ/body system involved to at least a moderate level of severity and who has at least two of the constitutional symptoms and signs in these listings will have an impairment that precludes any gainful activity." *Id.*

The Court applies these current regulations to the case at bar[6] and finds that Dr. Harris's controlling assessment establishes that Plaintiff had a listed impairment from April 1995 to May

---

[6] Generally, "[w]hen reviewing an agency's interpretation of federal law, the court applies the law in effect at the time it conducts its review, even if that was not the law in effect at the time

1999. Substantial evidence supports the finding that Plaintiff has continuing SLE, including a biopsy and multiple treating-physician diagnoses. *See, e.g.,* A.R. at 198, 204, 235, 332, 337. In May 1999, Dr. Harris found that Plaintiff had three of the four constitutional symptoms and signs, involvement of four organs/body systems to the "moderate" degree, and involvement of three additional systems to the "mild" degree. Consequently, Plaintiff qualifies as presumptively disabled under the disability framework. The record is complete with respect to this time period and the Court sees no utility in a remand for further factual development. As such, this is the end of the inquiry and disability benefits should be awarded for this period. *See Kilkenny v. Astrue,* 2009 WL 1321692, at *12 (S.D.N.Y. 2009) ("If the claimant has an impairment that meets one of the listings in Appendix 1, the claimant is considered disabled within the meaning of the statute and is entitled to disability insurance benefits[.]"). The Court remands the matter to the Commissioner solely for the calculation of benefits from April 25, 1995 (the date of the onset of Plaintiff's disability) to May 1999.

### d. Establishing Disability Post-1999

Following Dr. Harris's May 1999 report, however, the record is unclear whether Plaintiff's disability continued. For example, on September 26, 2000, Dr. Goodman reports Plaintiff as "doing well" and having "no SLE" at the time. A.R. at 577. On June 6, 2001, Dr. Goodman notes that Plaintiff was "feeling well" and not symptomatic of SLE. *Id.* at 553. Dr. Horwich reports similar improvements. On October 5, 2000, Dr. Horwich's notes indicate that Plaintiff's status was "stable" and she stopped by only to say "hello." *Id.* at 552. Furthermore, evidence shows that by March 2001, Plaintiff had perfect kidney function. *Id.* at 18. On this

---

the agency made its decision." *S. New England Tel. Co. v. MCI WorldCom Commc'ns, Inc.,* 353 F. Supp. 2d 287, 290 (D.Conn. 2005) (citing *Pacific Bell v. Pac-West Telecomm., Inc.,* 325 F.3d 1114, 1130 n.14 (9th Cir. 2003)). The Court applies this same principle to agency adjudications of its own regulations.

record, as a matter of law, the Court cannot determine whether Plaintiff remained disabled after May 1999. The Court remands this matter to the Commissioner to determine whether Plaintiff remains entitled to disability benefits after May 1999.

## CONCLUSION

For the foregoing reasons, the Court reverses the Commissioner's final decision and remands this action to the Commissioner for calculation of benefits from April 1995 to May 1999, and for determination of Plaintiff's eligibility for benefits for the period after May 1999.

**SO ORDERED.**

Dated: Brooklyn, New York
    July 30, 2009

/s/ SLT
SANDRA L. TOWNES
United States District Judge